ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAN 1 8 2022

KEVIN P. WEIMER, Clerk
By _____ Deputy Clerk



UNITED STATES OF AMERICA

*v.*

VIKAS MEHTA
WALTER VALDIVIA
PRADIP PARIKH
JAIME SALAS
ALPESH PATEL
DARASH SHAH
ARNAV MEHTA
ALEXIS GARCIA
ROBERT STARLING
SARAH STARLING

CRIMINAL INDICTMENT

No. 1:21-CR-0451

(FIRST SUPERSEDING)

THE GRAND JURY CHARGES THAT:

## COUNT ONE
*(Conspiracy to Commit Wire Fraud - 18 U.S.C. § 1349)*

1.  Beginning at least by in or about November 2020 and continuing through at least in or about May 2021, in the Northern District of Georgia and elsewhere, the defendants, VIKAS MEHTA, WALTER VALDIVIA, PRADIP PARIKH, JAIME SALAS, ALPESH PATEL, DARASH SHAH, ARNAV MEHTA, ALEXIS GARCIA, ROBERT STARLING, and SARAH STARLING, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with others, both known and unknown to the Grand Jury, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that these pretenses were and would be false and

1

fraudulent when made and caused to be made and that the omissions were and would be material, and, in so doing, caused interstate wire communications to be made in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

## Background

At all times relevant to the indictment:

## The Defendants and Entities They Controlled

2.  Defendant VIKAS MEHTA resided in Cliffside Park, New Jersey, and controlled and operated entities, including Snoopy Trst LLC and MVJ Holdings LLC. Snoopy Trst LLC was formed on or about October 2, 2019 in the State of New Jersey. MVJ Holdings LLC was formed on or about November 4, 2019, also in the State of New Jersey.

3.  Defendant WALTER VALDIVIA resided in Boca Raton, Florida, and controlled and operated entities, including Achieve Capital Group LLC and ACG Accounts Inc. Achieve Capital Group LLC was formed on or about September 27, 2019, in both the States of Wyoming and Florida. ACG Accounts Inc. was formed on or about July 27, 2020 in the State of Florida.

4.  Defendant PRADIP PARIKH resided in Valley Stream, New York, and controlled and operated entities, including JDM Management Inc. JDM Management Inc. was formed on or about May 14, 2013 in the State of New York.

5.  Defendant JAIME SALAS resided in Acworth, Georgia, and controlled and operated entities, including Salas Construction, LLC. Salas Construction LLC was formed on or about October 21, 2020 in the State of Georgia.

6.  Defendant ALPESH PATEL resided in Louisa, Virginia, and controlled and operated entity Seven Points Agency LLC. Seven Points Agency LLC was formed on or about April 20, 2021 in the State of Virginia.

7.  Defendant DARASH SHAH resided in Boston, Massachusetts, and

controlled and operated entity Turtle Dove Holdings LLC. Turtle Dove Holdings LLC was formed on or about December 14, 2020 in the State of New Jersey.

8.  Defendant ARNAV MEHTA resided in Cliffside Park, New Jersey, and controlled and operated entity Arnav Investments LLC. Arnav Investments LLC was formed on or about March 8, 2020 in the State of New Jersey.

9.  Defendant ALEXIS GARCIA resided in Smyrna, Georgia.

10. Defendant ROBERT STARLING resided in Marietta, Georgia.

11. Defendant SARAH STARLING resided in Marietta, Georgia.

### Other Entities and Individuals

12. Other individuals who are not charged here, and whose identities are both known and unknown to the Grand Jury, lived overseas, including in India, and placed telephone calls meant to defraud people in the United States.

13. These individuals did so oftentimes by first placing robocalls. Robocalls are calls made through an automated process that places large volumes of calls over the Internet in order to deliver recorded messages and entice a callback, in contrast to calls placed one–at–a–time by a live person. The robocalls provided callback numbers that, when used, connected the person residing in the United States with individuals overseas, including individuals located in India.

14. Other individuals who are not charged here, and whose identities are both known and unknown to the Grand Jury, include those who communicated with, sometimes by sending emails or other electronic communications to, persons residing in the United States. The communications provided a telephone number for the recipient to call, which connected the person residing in the United States with individuals overseas, including individuals located in India.

### Object of the Conspiracy

15. The object of the conspiracy was to fraudulently induce U.S.-based victims over the phone to send money to the defendants and their co–conspirators.

## Manner and Means

16. The manner and means by which the conspiracy was sought to be accomplished included, among other things, the following:

17. The defendants and their co–conspirators participated in a predatory wire fraud scheme in which they extorted and defrauded victims throughout the United States, including in the Northern District of Georgia. The victims included a significant number of elderly and vulnerable individuals and resulted in millions of dollars in loss.

18. When individuals in the United States received one of the defendants and their co–conspirators' communications and subsequently placed a call back to the number provided in the message, they would often be connected to individuals overseas, who would then attempt to defraud the victim into giving money.

19. The persons to whom the victims spoke over the telephone utilized various scam types, including, but not limited to, a government imposter scam — including a Social Security Number scam — and a computer-takeover scam. These scams were designed to scare, and did scare, the victims into transferring their money as instructed by the person on the telephone.

20. The government imposter scam involved the person on the telephone purporting to be a United States government official and telling the victim that they were suspected of committing crimes or of owing money. With the Social Security Number ("SSN") scam specifically, the person on the telephone posed as a Social Security Administration ("SSA") official in order to mislead the victim into believing that their SSN was involved in a crime. The individual on the phone would tell the victim that they would be arrested or would lose their assets if they did not send money.

21. The computer-takeover scam involved the victim receiving

4

communications from someone purporting to be with a legitimate company. With this fraud, victims were misled into thinking that they were entitled to a monetary refund from a company and were convinced into downloading software that enabled the defendants and their co–conspirators to control the victims' computers. Using this remote access, the defendants and their co–conspirators manipulated the victims' accounts to make it appear that, instead of being owed a refund, the victims actually owed a debt. To rectify this "debt," the victims were required to pay money.

22. The persons to whom the victims spoke over the telephone would instruct the victims how to pay. Sometimes the individual on the phone would tell the victim to withdraw cash, package the cash in shipping boxes, and deliver the package as instructed. Other times, the individual on the phone would tell the victim to obtain gift cards and read the redemption code on the back of the card to the individual on the phone. Oftentimes, the individual on the phone would tell the victim to wire money to a particular bank account; withdraw their money for cashier's checks made payable to a specific company; or deposit cash directly into a specific company's bank account.

23. To effect the wire fraud conspiracy, VIKAS MEHTA, VALDIVIA, SALAS, PATEL, SHAH, and ARNAV MEHTA formed various entities with Secretary of State offices and used those entities to open bank accounts. These businesses were "shell companies," meaning that they had no assets or viable business. Their purpose was to receive victim funds. The companies, and their accounts, included:

| DEFENDANT | COMPANY | BANK ACCOUNT |
|---|---|---|
| **VIKAS MEHTA** | Snoopy Trst LLC | KEB Hana Bank x9754 |
| | | Metro City Bank x3126 |
| | MVJ Holdings LLC | KEB Hana Bank x9598 |
| **VALDIVIA** | Achieve Capital Group LLC | Bank of America x9360 |
| | ACG Accounts Inc. | JP Morgan Chase x2228 |
| **SALAS** | Salas Construction LLC | JP Morgan Chase x2182 |
| **SHAH** | Turtle Dove Holdings LLC | Bank of America x1715 |
| **PATEL** | Seven Points Agency LLC | Truist Bank x8297 |
| **ARNAV MEHTA** | Arnav Investments LLC | Wells Fargo x0330 |

24. Victims were also instructed to deposit money into PARIKH's business account. While PARIKH's company may have done some business, the account was primarily used to receive victim funds. The company and account included:

| DEFENDANT | COMPANY | BANK ACCOUNT |
|---|---|---|
| **PARIKH** | JDM Management Inc. | JP Morgan Chase x9602 |

25. Victims were also instructed to deposit money into personal bank accounts belonging to GARCIA, ROBERT STARLING, and SARAH STARLING. These accounts included:

| DEFENDANT | BANK ACCOUNT |
|---|---|
| **GARCIA** | JP Morgan Chase Bank x9609 |
| **ROBERT STARLING** | Truist Bank x4600 |
| **SARAH STARLING** | Truist Bank x4258 |

26. For example, in or about October 2020, H.S. — a 74-year-old woman — received a telephone call from someone purporting to be from the SSA. The person with whom H.S. spoke told her that she needed a new Social Security Number because there was a warrant out for her arrest. The scammer called H.S.

five days a week for months, convincing her to liquidate her retirement savings of over $500,000.

27. The caller instructed H.S. to write checks and deposit those checks into specific accounts. H.S. did as instructed and wrote, in part, a $75,000 check on or about December 1, 2020, made payable to, and deposited into, VALDIVIA's Achieve Capital Group LLC account.

28. In or about February 2021, the individual on the phone also directed H.S. to withdraw cash, package the cash in boxes, and then give the packages to someone who came to her home. H.S. did so.

29. Later, in or about May 2021, the individual on the phone directed H.S. to purchase six gift cards for $500 each and read the redemption code on the back of the card to the caller.

30. As another example, on or about November 2020, D.T. received a telephone call from someone who claimed to work for the SSA. The caller misled D.T. into believing that her SSN had been stolen and was used to rent an apartment, inside of which law enforcement found drugs. The caller told D.T. that the only way she could obtain a new SSN was to send money to a bank account provided by the caller. D.T. transferred her life insurance proceeds that she had inherited from her recently deceased spouse, depositing more than $500,000 into the instructed bank accounts, to include PARIKH's JDM Management, Inc. account and VALDIVIA's Achieve Capital Group account.

31. When D.T.'s bank became suspicious of one of the requested wire transfers, PARIKH telephoned D.T. and asked her to talk to her bank and convince them to release the funds.

32. As further part of the conspiracy, B.S. — a 71-year-old man — received a telephone call on or about November 2, 2020 from someone claiming to work for the SSA and stating that B.S.'s SSN had been compromised and involved in

7

criminal activity. The caller instructed B.S. to wire $26,000 to VIKAS MEHTA's MVJ Holdings LLC's bank account. When the bank initially would not accept B.S.'s wire transfer, VIKAS MEHTA emailed the bank a copy of B.S.'s driver's license and wire transfer confirmation form.

33. In furtherance of the conspiracy, in or about October 2020, R.H. received a telephone call from someone who told R.H. that unknown persons were using R.H.'s SSN to commit crimes. The caller provided SALAS's personal bank account, located in the Northern District of Georgia, and instructed R.H. to send two wire transfers to that account. R.H. did as instructed, wiring $59,430 and $61,890.

34. In furtherance of the conspiracy, on or about December 11, 2020, 73–year–old R.K. received a telephone call from someone claiming to be from the SSA. The caller told R.K. that a warrant was out for his arrest. The next day, on or about December 12, 2020, another individual, claiming to be a United States Marshal, telephoned R.K. and confirmed that an arrest warrant existed for him. The caller gave R.K. the bank account for SALAS's business, Salas Construction LLC, which is located in the Northern District of Georgia. Fearing the loss of his military pension, R.K. wire transferred $60,000 to the instructed account.

35. In furtherance of the conspiracy, in or about December 2020, D.P., a 78–year–old military retiree, received a telephone call from someone purporting to be from the Internal Revenue Service. The caller told D.P. that he owed back taxes. The caller instructed D.P. to wire $60,000 to SALAS's Northern District of Georgia account in the name of Salas Construction LLC. D.P. did as instructed.

36. As another example, in or about May 2020, S.W. received a call from someone claiming to work for the Drug Enforcement Administration ("DEA"). According to the caller, the DEA had intercepted packages containing drugs, and

8

threatened to arrest S.W. if she did not wire money. As instructed, S.W. wired $30,909 to PATEL's Seven Points Agency LLC bank account.

37. As an example of the computer-takeover scam, on or about February 16, 2021, 66–year–old C.W. spoke over the telephone with someone claiming to work for Amazon. The person on the phone told C.W. that her Amazon account had been hacked and that Amazon owed her a refund. To receive the refund, C.W. first needed to download the computer software called AnyDesk. When C.W. did so, the individual on the phone was able to remotely access the computer. From there, the individual was able to make it appear that Amazon had accidentally refunded C.W. too much money and that, now, C.W. owed Amazon. To fix that "debt," the individual told C.W. to wire $35,786 to SHAH's Turtle Dove Holdings LLC's account. C.W. did so. The individual also gained access to C.W.'s credit card, after which someone proceeded to use the card's maximum amount of credit.

38. In another example, and in furtherance of the conspiracy, in or about April 2021, B.H. — a 76–year–old woman living in Powder, Springs, Georgia, in the Northern District of Georgia — received an email purporting to be from PayPal and addressing an unknown charge on B.H.'s PayPal account. B.H. telephoned the number provided in the email and communicated with someone who stated that they worked for PayPal. The person with whom B.H. spoke said that they would refund B.H.'s money, but that, first, B.H. needed to download the computer software TeamViewer onto her computer. Once B.H. did this, and unbeknownst to her, the person to whom she was speaking was able to remotely access her computer. The person who now had remote access to B.H.'s computer transferred money from one of B.H.'s accounts into her checking account such that it appeared that B.H. had been refunded more money than she was allegedly

due. To remedy this perceived debt, B.H. wired $39,500 to VALDIVIA's ACG Accounts Inc. bank account as instructed.

39. As further part of the conspiracy, J.M. — a 64-year-old man — received text messages in or about March 2021 from someone claiming to work for the SSA and stating that J.M.'s SSN had been compromised and involved in criminal activity. J.M. called the number in the text messages, and the caller instructed J.M. to wire $43,000 to ROBERT STARLING's personal bank account, located in the Northern District of Georgia, at Truist bank. J.M. did so.

40. Also in furtherance of the conspiracy, in or about April 2021, S.T., a 76–year–old woman, received a telephone call from someone purporting to be from the SSA. The caller told S.T. that her SSN had been used for fraud in Texas and that she would need to send money to have a new SSN issued. The caller instructed S.T. to wire $32,000 to SARAH STARLING's Northern District of Georgia bank account. S.T. did as instructed on or about April 5, 2021.

41. In furtherance of the conspiracy, on or about April 2021, E.B. – an 85-year-old woman – received a telephone call from someone claiming to be from the SSA. The caller told E.B. that her driver's license was found in an abandoned vehicle that contained ten pounds of narcotics near the Texas and Mexico border. The caller further told E.B. that a warrant had been issued for her arrest and provided SARAH STARLING's personal bank account, which is located in the Northern District of Georgia, and instructed E.B. to send a wire transfer to that account. E.B. did as instructed, wiring $38,760 on or about April 9, 2021.

42. Also in furtherance of the conspiracy, in or about April 2021, M.G. — a 69-year-old woman, now deceased—received a telephone call from someone purporting to be from the SSA. The person with whom M.G. spoke told her that she needed a new SSN because hers was used in identity theft.

43. The caller instructed M.G. to wire money to a JP Morgan Chase account

located in the Northern District of Georgia and belonging to GARCIA. M.G. completed the wire transfer on April 9, 2021, wiring $35,110.00.

44. In furtherance of the conspiracy, on or about April 13, 2021, V.C. received an email purporting to be from Amazon and telling V.C. that she should telephone the callback number if she had not placed the Amazon order that had been received. V.C. returned the call, and, during the course of the conversation, the scammer took control of V.C.'s computer. In doing so, the scammer made V.C. believe that she owed Amazon $39,500 and told her that she had to wire a repayment to GARCIA's personal JP Morgan Chase bank account, located in the Northern District of Georgia. V.C. did so on or about April 14, 2021.

45. In furtherance of the conspiracy, in or about April 2021, E.S. received a phone call from someone claiming to be from the SSA. The caller told her that her SSN had been suspended because it had been used for criminal activities. The initial caller then transferred her to multiple other callers, who threatened to have E.S. arrested if she did not comply with their demands. On or about April 28, 2021, E.S. wired $22,160.00 to GARCIA's personal JP Morgan Chase bank account, located in the Northern District of Georgia, as instructed by the scammers.

46. After the callers confirmed that E.S.'s first wire transfer went through, on or about April 29, 2021, E.S. was instructed to make a second wire transfer to a SunTrust (now Truist) account, located in the Northern District of Georgia, belonging to SARAH STARLING. E.S. completed the wire transfer totaling $22,160.00.

47. In furtherance of the conspiracy, in or about April 2021, 91–year–old R.B. received a telephone call from someone claiming to be from the United States Department of the Treasury. The caller told R.B. that his name and account were identified as a subject of fraud and threatened to confiscate his funds. Over the

next few days, the caller convinced R.B. to wire $15,000 to SARAH STARLING's personal bank account, which is located in the Northern District of Georgia. R.B. completed the wire transfer on or about May 4, 2021.

48. During the course of the conspiracy, VIKAS MEHTA possessed, among other things, copies of victims' driver's licenses and/or money transfer receipts, including those for D.T. (who deposited money into PARIKH and VALDIVIA's bank accounts), C.W. (who deposited money into SHAH's bank account), S.W. (who deposited money into PATEL's bank account), and B.S. (who deposited money into VIKAS MEHTA's bank account).

49. It was part of the conspiracy that the defendants and their co–conspirators communicated with each other regarding the victims' fraud proceeds.

50. It was further part of the conspiracy that the defendants and their co–conspirators transferred victim money to, and between, themselves. For example, SHAH, GARCIA, and SARAH STARLING all transferred victim money to accounts controlled by ARNAV MEHTA. PARIKH transferred victim money to Individual #1, a co–conspirator known to the Grand Jury, and vice versa. Individual #1 transferred victim money to VIKAS MEHTA. PATEL also transferred victim money to VIKAS MEHTA, who then transferred victim money to VALDIVIA. SHAH and SALAS both transferred victim money to VALDIVIA, who ultimately transferred victim money overseas, including to a company specializing in bitcoin conversion.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FOURTEEN
*(Wire Fraud – 18 U.S.C. §§ 1343 and 2)*

51. The Grand Jury realleges and incorporates by reference the factual allegations laid out in paragraphs 2 through 50 of this Indictment as though fully set forth here.

52. On or about each of the dates set forth below, in the Northern District of Georgia and elsewhere, the defendants, VIKAS MEHTA, WALTER VALDIVIA, PRADIP PARIKH, JAIME SALAS, ALPESH PATEL, DARASH SHAH, ARNAV MEHTA, ALEXIS GARCIA, ROBERT STARLING, and SARAH STARLING, aided and abetted by each other and others known and unknown to the Grand Jury, with the intent to defraud, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, and, in so doing, caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, and sounds, as described below:

| COUNT | DATE | WIRE DESCRIPTION |
|---|---|---|
| 2 | 10/22/2020 | A wire transfer in the amount of $59,430 from R.H.'s account to SALAS's personal Bank of America account x9061. |
| 3 | 10/23/2020 | A wire transfer in the amount of $61,890 from R.H.'s account to SALAS's personal Bank of America account x9061. |
| 4 | 12/11/2020 | A wire transfer in the amount of $60,000 from D.P.'s account to SALAS's Salas Construction LLC JP Morgan Chase account x2182. |
| 5 | 12/14/2020 | A wire transfer in the amount of $60,000 from R.K.'s account to SALAS's Salas Construction LLC JP Morgan Chase account x2182. |

| 6 | 3/26/2021 | A wire transfer in the amount of $43,000 from J.M's account to ROBERT STARLING's personal Truist account x4600. |
| 7 | 4/5/2021 | A wire transfer in the amount of $32,000 from S.T.'s account to SARAH STARLING's personal Truist account x4258. |
| 8 | 4/9/2021 | A wire transfer in the amount of $38,760 from E.B.'s account to SARAH STARLING's personal Truist account x4258. |
| 9 | 4/9/2021 | A wire transfer in the amount of $35,110 from M.G.'s account to GARCIA's personal JP Morgan Chase account x9609. |
| 10 | 4/14/2021 | A wire transfer in the amount of $39,500 from V.C.'s account to GARCIA's personal JP Morgan Chase account x9609. |
| 11 | 4/28/2021 | A wire transfer in the amount of $22,160 from E.S.'s account to GARCIA's personal JP Morgan Chase account x9609. |
| 12 | 4/28/2021 | A wire transfer in the amount of $39,500 from B.H.'s account to VALDIVIA's ACG Accounts Inc. JP Morgan Chase account x2288. |
| 13 | 4/29/2021 | A wire transfer in the amount of $22,1600 from E.S.'s account to SARAH STARLING's personal Truist account x4258. |
| 14 | 5/4/2021 | A wire transfer in the amount of $15,000 from R.B.'s account to SARAH STARLING's personal Truist account x4258. |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNT FIFTEEN
*(Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h))*

53. The Grand Jury re–alleges and incorporates by reference the factual allegations laid out in paragraphs 2 through 50 of this Indictment as if fully set forth here.

54. Beginning by at least in or about November 2020 and continuing through at least in or about May 2021, in the Northern District of Georgia and elsewhere, the defendants, VIKAS MEHTA, WALTER VALDIVIA, PRADIP PARIKH, JAIME SALAS, ALPESH PATEL, DARASH SHAH, ARNAV MEHTA, ALEXIS GARCIA, ROBERT STARLING, and SARAH STARLING, did knowingly combine, conspire, agree, and have a tacit understanding with one another, and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

(a) To knowingly conduct and attempt to conduct, and cause to be conducted, financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that said transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of

15

unlawful activity; in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) To knowingly engage and attempt to engage in, and cause the engagement in, monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, knowing that such transactions involved criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343; in violation of Title 18, United States Code, Section 1957.

### Manner and Means

55. When funds obtained through fraud were received into the defendants' and their co–conspirators' personal and business bank accounts, the defendants and their co–conspirators quickly disbursed those illegally obtained funds by making interstate and foreign wire transfers to other bank accounts and by making cash or check withdrawals. By doing so, the defendants and their co–conspirators attempted to conceal and did conceal the source of funds obtained illegally through the government imposter and computer-takeover scams.

56. For example, on or about December 1, 2020, victim D.T. deposited a cashier's check for $50,000 into PARIKH's JDM Management Inc. JP Morgan Chase account x9602. That same day, PARIKH wrote a $50,000 check made payable to Individual #1, which was subsequently deposited into Individual #1's personal Bank of America account x2742. Also that same day, $14,970 was wire transferred from Individual #1's business Bank of America account x4630 to VIKAS MEHTA's Snoopy Trst LLC KEB Hana Bank account x9754. From there

the money was, in part, withdrawn as cash and used for various living and personal expenses.

57. On or about December 11, 2020, victim D.P. wire transferred $60,000 to SALAS's Salas Construction LLC JP Morgan Chase account x2182 in the Northern District of Georgia. The next day, on or about December 12, 2020, in furtherance of the conspiracy, SALAS withdrew $43,300 in the form of a cashier's check from SALAS's Salas Construction LLC JP Morgan Chase account x2182 and deposited the check into VALDIVIA's Achieve Capital Group Bank of America account x9360. The proceeds were subsequently transferred to various other shell company bank accounts owned and controlled by VALDIVIA.

58. On or about December 14, 2020, victim R.K. wire transferred $60,000 to SALAS's Salas Construction LLC JP Morgan Chase account x2182, located in the Northern District of Georgia. The next day, on or about December 15, 2020, in furtherance of the conspiracy, $9,950 in cash was withdrawn from SALAS's Salas Construction LLC account.

59. On or about February 17, 2021, victim C.W. wire transferred $35,786 to SHAH'S Turtle Dove Holdings LLC Bank of America account x1715. Approximately two days later, on or about February 19, 2021, in furtherance of the conspiracy, SHAH did two things. First, SHAH obtained a cashier's check for $17,000.00 payable to ARNAV MEHTA. This cashier's check was deposited into ARNAV MEHTA's personal JP Morgan Chase account x8628. These proceeds were subsequently used to purchase an apartment where ARNAV MEHTA and VIKAS MEHTA resided together.

60. Second, on or about February 19, 2021, $30,418 was wire transferred from SHAH's Turtle Dove Holdings LLC Bank of America account x1715 to VALDIVIA's ACG Accounts Inc. JP Morgan Chase account x2228. The proceeds were subsequently transferred to various other shell company bank accounts

opened and controlled by VALDIVIA, and eventually transferred to companies located overseas, including one that specializes in bitcoin conversion.

61. On or about April 5, 2021, victim S.T. wire transferred $32,000, and on or about April 9, 2021, victim E.B. wire transferred $38,760, to SARAH STARLING's personal Truist bank account x4258. After receiving those funds, on or about April 12, 2021, in furtherance of the conspiracy, SARAH STARLING obtained a cashier's check – from a branch located in the Northern District of Georgia – for $27,907 payable to ARNAV MEHTA's Arnav Investments LLC, and the cashier's check was deposited into ARNAV MEHTA's Arnav Investments LLC Wells Fargo account x0330. SARAH STARLING also withdrew some of the fraud proceeds as cash.

62. Also in furtherance of the conspiracy, on or about April 15, 2021, ARNAV MEHTA wrote a check for $31,447 from his Arnav Investments LLC Wells Fargo bank account x0330 to Individual #2, an individual known to the Grand Jury.

63. In another example, the following victims wire transferred funds to GARCIA's personal JP Morgan Chase Bank account x9609: on or about April 9, 2021, victim M.G. wire transferred $35,110, and on or about April 14, 2021, victim V.C. wire transferred $39,500. In furtherance of the conspiracy, on or about April 12, 2021, GARCIA obtained a cashier's check – at a branch located in the Northern District of Georgia – drawn on JP Morgan Chase account x9609 for $13,540 payable to ARNAV MEHTA's Arnav Investments LLC, which was deposited into the Arnav Investments LLC Wells Fargo account x0330. GARCIA also withdrew some of the fraud proceeds via cash withdrawals.

64. In another example, the following victims wire transferred funds to PATEL's Seven Points Agency LLC Truist Bank account x8297: on or about May 4, 2021, victim J.H. wire transferred $44,800; on or about May 4, 2021, victim S.W. wire transferred $30,909; and on or about May 5, 2021, victim J.S. wire

transferred $32,900. In furtherance of the conspiracy, on or about May 5 and 6, 2020, $68,275 and $29,879 were wire transferred, respectively, from PATEL's Seven Points Agency LLC Truist Bank account x8297 to VIKAS MEHTA's Snoopy Trst LLC Metro City Bank account x3126. Metro City Bank is headquartered in the Northern District of Georgia.

65. Also in furtherance of the conspiracy, on or about May 6, 2021, VIKAS MEHTA wire transferred $64,508 from his Snoopy Trst LLC Metro City Bank — a bank that is headquartered in the Northern District of Georgia — account x3126 to VALDIVIA's ACG Accounts Inc. JP Morgan Chase account x2228.

66. On or about October 29, 2020, SALAS opened JP Morgan Chase bank account x2182 for Salas Construction LLC, the shell company he created. SALAS opened this bank account to receive victim funds and then moved those funds to conceal them, in furtherance of the money laundering conspiracy.

67. On or about December 7, 2020, VIKAS MEHTA opened Metro City Bank account x3162 for MVJ Holdings LLC, the shell company he created. He did so to receive victim funds and then move those funds to conceal them, in furtherance of the money laundering conspiracy. Metro City Bank is headquartered in the Northern District of Georgia.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS SIXTEEN THROUGH TWENTY-SIX
(*Conducting Monetary Transactions Over $10,000 in Criminally Derived Property – 18 U.S.C. §§ 1957 and 2*)

68. The Grand Jury re–alleges and incorporates by reference the factual allegations laid out in paragraphs 2 through 50 and 55 through 67 of this Indictment as if fully set forth here.

69. On or about the dates set forth below, in the Northern District of

19

Georgia and elsewhere, the defendants, VIKAS MEHTA, WALTER VALDIVIA, PRADIP PARIKH, JAIME SALAS, ALPESH PATEL, DARASH SHAH, ARNAV MEHTA, ALEXIS GARCIA, ROBERT STARLING, and SARAH STARLING, aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly engage and attempt to engage in the following monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, that is, the deposit, withdrawal, transfer, and exchange of U.S. currency, funds, and monetary instruments in the amounts set forth below, such property having been derived from a specified unlawful activity, that is, a scheme to defraud in violation of Title 18, United States Code, Section 1343:

| COUNT | DATE | TRANSACTION | AMOUNT |
|-------|------|-------------|--------|
| 16 | 12/12/2020 | Withdrawal in the form of a cashier's check from SALAS's Salas Construction LLC JP Morgan Chase account x2182 and deposited into VALDIVIA's Achieve Capital Group LLC Bank of America account x9360. | $43,000 |
| 17 | 3/25/2021 | Cash withdrawal from ROBERT STARLING's personal Truist account x4600. | $11,000 |
| 18 | 3/29/2021 | Cash withdrawal from ROBERT STARLING's personal Truist account x4600. | $12,900 |
| 19 | 4/15/2021 | Cash withdrawal from GARCIA's personal JP Morgan Chase account x9609. | $11,060 |
| 20 | 4/12/2021 | Withdrawal in the form of a cashier's check from SARAH STARLING's personal Truist account x4258 and deposited into ARNAV MEHTA's Arnav Investments LLC Wells Fargo account x0330. | $27,907 |

| 21 | 4/12/2021 | Withdrawal in the form of a cashier's check from GARCIA's personal JP Morgan Chase account x9609 and deposited into ARNAV MEHTA's Arnav Investments LLC Wells Fargo account x0330. | $13,540 |
|---|---|---|---|
| 22 | 4/15/2021 | Cash withdrawal from SARAH STARLING's personal Truist account x4258. | $16,324 |
| 23 | 4/26/2021 | Cash withdrawal from SARAH STARLING's personal Truist account x4258. | $15,585 |
| 24 | 5/5/2021 | Wire transfer from PATEL's Seven Points Agency LLC Truist Bank account x8297 to VIKAS MEHTA's Snoopy Trst LLC Metro City Bank account x3126. | $68,275 |
| 25 | 5/6/2021 | Wire transfer from PATEL's Seven Points Agency LLC Truist Bank account x8297 to VIKAS MEHTA's Snoopy Trst LLC Metro City Bank account x3126. | $29,879 |
| 26 | 5/6/2021 | Wire transfer from MEHTA's Snoopy Trst LLC Metro City Bank account x3126 to VALDIVIA's ACG Accounts Inc. JP Morgan Chase account x2288. | $64,508 |

All in violation of Title 18, United States Code, Section 1957 and Section 2.

## COUNTS TWENTY-SEVEN THROUGH TWENTY-EIGHT
(*Engaging in Monetary Transactions to
Conceal Criminal Activity – 18 U.S.C. §§ 1956(a) and 2*)

70. The Grand Jury re–alleges and incorporates by reference the factual allegations laid out in paragraphs 2 through 50 and 55 through 67 of this Indictment as if fully set forth here.

71. On or about the dates set forth below, in the Northern District of Georgia and elsewhere, the defendants, VIKAS MEHTA, WALTER VALDIVIA, PRADIP PARIKH, JAIME SALAS, ALPESH PATEL, DARASH SHAH, ARNAV MEHTA, ALEXIS GARCIA, ROBERT STARLING, and SARAH STARLING, aided and

21

abetted by each other and others known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct the following financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is a scheme to defraud in violation of Title 18, United States Code, Section 1343, with the intent to conceal and disguise the nature, source, ownership, and control of the proceeds of the specified unlawful activity, and, while conducting and attempting to conduct the financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| COUNT | DATE | TRANSACTION | AMOUNT |
|---|---|---|---|
| 27 | 12/15/2020 | Cash withdrawal from SALAS's Salas Construction LLC JP Morgan Chase account x2182 | $9,950 |
| 28 | 4/12/2021 | Cash withdrawal from GARCIA's personal JP Morgan Chase account x9609 | $10,000 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and Section 2.

## FORFEITURE PROVISION

72. Upon conviction of one or more offenses alleged in Counts One Through Fourteen of this Indictment, the defendants, VIKAS MEHTA, WALTER VALDIVIA, PRADIP PARIKH, JAIME SALAS, ALPESH PATEL, DARASH SHAH, ARNAV MEHTA, ALEXIS GARCIA, ROBERT STARLING, and SARAH STARLING, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2641(c), all

property, real or personal, which constitutes or is derived from proceeds traceable to said violations, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense(s) for which the defendant is convicted.

73. Upon conviction of one or more offenses alleged in Counts Fifteen through Twenty-Eight of this Indictment, the defendants, VIKAS MEHTA, WALTER VALDIVIA, PRADIP PARIKH, JAIME SALAS, ALPESH PATEL, DARASH SHAH, ARNAV MEHTA, ALEXIS GARCIA, ROBERT STARLING, and SARAH STARLING, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property constituting, or derived from, proceeds which were obtained directly or indirectly as the result of such violation. The forfeited property includes, but is not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense(s) for which the defendant is convicted.

74. If, as a result of any act or omission of the defendants, any property subject to forfeiture:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by, Title 28, United States Code, Section 2461(c), to seek

forfeiture of any other property of said defendants up to the value of the
forfeitable property.

A    _TRUE_    BILL

_____
FOREPERSON

KURT R. ERSKINE
 UNITED STATES ATTORNEY

_J. ELIZABETH MCBATH_

J. ELIZABETH MCBATH
 ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 297458

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

24